CASE No. 923.

PEGUES v. WARLEY.

1.  The possession of successive purchasers of a tract of land covered by the lien of a judgment, who derived title from the judgment debtor, cannot be united so as to make up the statutory period necessary to give title by adverse possession.

2.  The act of 1865, to amend the stay law, (13 *Stat.* 286, 305, ? 4,) suspended the statute of limitations, and while that act was in existence, the statute of limitations did not run in favor of a purchaser of land covered by the lien of a judgment, as against the judgment creditor.

Before KERSHAW, J., Darlington, October, 1879.

Hon. T. B. Fraser, judge of the Third Circuit, sat in the place of Associate Justice McIver, who had been of counsel.

This was an action commenced February 21st, 1879, by Samuel W. Pegues to recover the possession of a tract of land purchased by him on January 6th, 1879, under judgment obtained in October, 1860, and revived in 1872.   The defendant, Rowena L. Warley, claimed by adverse possession under the circumstances stated in the opinion of court.   B. S. Josey, tenant in possession under Mrs. Warley, and T. D. Wagner, who held a mortgage on the land dated May, 1866, were also defendants.

The Circuit decree is as follows :

This case was heard by the court without a jury by agreement of counsel.

The first question that presents itself is, whether the statute of limitations will protect the defendant's title against the lien of Pegues' judgment.

This seems now not to be an open question, if the possession was adverse and continued for the statutory period, and there were no intervening disabilities or other circumstances to prevent the operation of the statute. *McRaa* v. *Smith,* 2 *Bay.* 339; *Lamar* v. *Raysor,* 7 *Rich. Eq.* 511. Nor will it be seriously questioned that when one holds land as his own, by virtue of a purchase and regular conveyance of the legal title, with actual possession thereunder, he holds adversely to all the world. *Sumner* v. *Murphy,* 2 *Hill* 488; *Simmons* v. *Parsons, Id.* 492. Such was undoubtedly the character of the possession in this case, since the purchase by Wagner.

The next question to be determined upon the facts is, whether the possession of the Warleys can be connected with that of Wagner, so as to make out a continuous possession for ten years, and thus protect Mrs. Warley's title.

There is no question that Wagner was seized in fee of the land claimed by the plaintiff, by an absolute and perfect title. He had not only the seisin in law, but the seisin in fact. Not only the right to the land, but the actual possession thereof. These two concurring, he had seisin "*de droit et de claime,* whereof no man may disseise him," as an old author hath it. This seisin, not a new one, he transferred by deed to Warley, whose estate was, therefore, the same, and Mrs. Warley, the defendant, holds by virtue of that title as devisee. Where the possession originally was wrongful, until it ripened into a right by lapse of time, or by descent cast, there was no estate, no right of property which could be conveyed by deed. Consequently, the puchasher from a party thus in possession of lands of another, acquired nothing by his deed. They were, as to the real owners, mere trespassers, who could not tack their successive trespasses together so as to defeat the right of him who had the title. This is settled law in South Carolina. *Mazyck* v. *Wight,* 2 *Brev.* \*151; *King* v. *Smith, Rice* 11.

The current of authorities elsewhere, however, is various, as may be seen by reference to Mr. Washburn's Treatise on Real Property, Vol. III. 130, and Smith's Leading Cases, Vol. II. 416, in notes to Nepeau *v.* Doe, where the cases are collected. In New York, Vermont and Massachusetts, possessions may be

tacked, if one comes in under the other, and the possessory estates are connected and continuous, but not otherwise. So, in Pennsylvania, in a number of cases, in one of which, *Moore* v. *Small,* 9 *Barr.* 194, it is said that the contrary doctrine, " was never acknowledged as sound by any land lawyer or judge of that state." So in Kentucky and Texas the law is the same. In Tennessee and North Carolina, it is not necessary to show even a parol agreement between successive occupants. It " is enough that the owner has been kept out of possession the requisite time, if there has been a continuous possession by successive occupants."

Mr. Washburn (Vol. III., 130) states the prevalent doctrine, thus : " In the case of successive holders of land, after a disseisin committed by one of them, the seisin thereby acquired by him will not enure to the benefit of the others who come into possession after him, unless there is a privity of estate between them and him, by purchase or descent. Their connected possessions cannot, in the language of the law, be tacked together to make a continuity of disseisin."

Again, at p. 125, he says : " But this possession need not be continued by the same person. It will be sufficient that it is held by different persons in succession, holding *in privity* with each other, or with the one who claims title by such possession."

There is no case in this state which determines that a conveyance of land by him who holds the same by a perfect title, to another to whom he transfers such title, accompanied with possession, breaks the continuity of such possession. On the contrary, the decisions only go to this extent that a mere trespassser, having nothing to convey, no estate in the land, can not by his deed convert the entry of his successor into anything more than a naked trespass as against the rightful owner. *Mazyck* v. *Wight* and *King* v. *Smith, supra.*

I consider, however, that the reasoning of the court in *Wilson* v. *McLenaghan, McM. Eq.* 35, is conclusive of this point.

I shall next consider the effect of the injunction against creditors, under the bill filed by the administrators of Zimmerman against Pegues and others, being a bill to marshal assets, etc.

This bill was filed June 2d, 1868, and dismissed on a plea to the jurisdiction in October, 1871. Shall this period be deducted in calculating the running of the statute ?

In *Chitty's Gen. Pr.*, *Vol. I.*, 781, it is said : "It is settled that the mere pendency of a bill in chancery against the claimant, is not sufficient to take the debt out of the statute of limitations, and so it is where the bill is dismissed. But it is said, that if a party be stayed by injunction, it is otherwise, and it has been considered that when the statute has run by the retention of a bill or otherwise in a court of equity, the court will not allow the statute to be set up. But it should seem that unless the court has previously directed that the statute shall not be set up at law, it will not afterwards entertain a bill or application for that purpose, and therefore the claimant should make a proper application to the court of equity, pending the proceedings and before the statute has barred the remedy at law ; or he should take care and issue, and continue proper proceedings at law. The authorities to which he refers seem fully to warrant this summary of the law. The cases of *Dixon* v. *Gayfere* and *Fluker* v. *Gordon*, 23 *Eng. L. & E.* 149, sustain the proposition that "the institution of a suit to establish the right of real property, (the legal estate being outstanding,) has not the effect to stop the operation of the statute of limitations." But it is said in *Pulteney* v. *Warren*, 6 *Ves.* 93, "that a creditor prevented by the act of the court from obtaining a judgment, is put in the same position as if he had it." This, however, would seem to be confined to a case, where the injunction was had on the application of the defendant at law, or at least to a case in which he was a party to the injunction suit.

In the case of *Miller* v. *McIntyre*, 6 *Pet.* 64, it was held that until the defendants were made parties to the bill, the statute would not be suspended as to them. The court says it would be a novel and unjust principle to make the defendants responsible for a proceeding of which they had no notice, and when a final decree in the case could not have prejudiced their rights."

And in *Alexander* v. *Pendleton*, 8 *Cranch* 462, it is decided, that " where a suit is dismissed, and a new bill filed, the plain-

tiff cannot, in the computation of time to take a case out of
the statute of limitations, avail himself of the pendency of the
former suit, unless he can connect the two suits together." In
our own cases at law, the rule of the common law is recognized,
that process to take a case out of the statute, must be continued
to the time of trial. *Gray* v. *Moorhead*, 2 *Mills* 439. After a
diligent search, I am unable to find any case which determines,
that at law, a reply to the statute would be good, which sets
forth the pendency of a bill in equity, under which the plaintiff
had been restrained by injunction from pursuing his remedy at
law. On the other hand, it was held in *Barker* v. *Millard*, 16
*Wend.* 572, that before the adoption of the revised statutes in
New York, an injunction from chancery would not suspend
the running of the statute, and the party enjoined had to
apply to that court to restrain his adversary from setting it
up at law.

All the cases which I have examined amount only to this,
that where a party is so restrained, the court, upon application,
will, by order, restrain the person against whom the legal
demand exists, from setting up the statute. It would seem to
follow that, if as said by Mr. Chitty, the party neglects, while
the equity suit is still pending, to protect himself in this way,
the statute will continue to run. This is the more evident, when
the person whose rights are to be protected by the statute, is not
a party to the injunction suit, as was the case here. It would
be more accurate to say that the statute is never suspended by
reason of the restraint imposed by the court of equity, because
there is no power in the court to suspend a statute.

The utmost that a court can do, is to operate upon the party
and prevent him from claiming the benefit of a statute, inequita-
bly. This extraordinary power, not having been invoked, there
is nothing to prevent the bar of the statute of limitations in this
case, so far as concerns the effect of this injunction.

Furthermore, both these suits in equity were brought by the
administrators of Zimmerman, to have his estate administered
there, because of a deficiency of assets, and in the meantime to
preserve the assets, and protect the administrators from suits at
law, by enjoining legal proceedings against them.

It is difficult to see how an injunction in such a case could have restrained Pegues from enforcing his execution against the land in Warley's possession. There certainly was no good reason why it should.

As to the second bill filed by the administrators of Zimmerman, Pegues was specially excepted from the injunction therein, and as the cases already cited show, the mere pendency of a suit in equity cannot affect the currency of the statute. This brings me to the consideration of the bill filed in January, 1873, by Wagner and Warley to enjoin the sale of the land in question, under Pegues' judgment. Whatever might have been the difficulties in the way, prior to the adoption of the code, it is presumed that there can be none now to prevent the injunction in that case, from suspending the statute during its pendency. Section 128 of the code, is explicit in declaring that where action is stayed by injunction, the statute is suspended. That this injunction suit was dismissed, will not alter this result. The fact remains, that Pegues was restrained by injunction. The court had jurisdiction of the general subject, and the bill was dismissed for the want of equity. *Wagner* v. *Pegues*, 10 *S. C.* 262. Pegues was bound to obey the injunction as he did. *High on Injunc.*, § 48.

The effect of the stay law is now to be considered.

It is sufficient to say as to the act of 1861, that the statute is not suspended, except as to " causes of action," and does not apply in terms to cases in which the execution of final process was inhibited. It may be that the general assembly supposed it had sufficiently guarded the rights of judgment creditors, by the second section of the act. However this may be, it did not provide for this case. It was so considered by the assembly of 1865, for care was taken in re-enacting the stay law of that year to provide for this very case. *A. A.* 1865, *p.* 305, § 4. It is there declared that, during the continuance of that act, the statute of limitations should be suspended against the claims of all persons in possession of property of debtors on final process, and on which such process may have a lien." This act continued of force until the adjournment of the next regular session of the general assembly. Its effect was to suspend the

operation of the statute of limitations against Pegues for one year.

It remains to apply these conclusions to the case under consideration.

Wagner's adverse possession commenced December 31st, 1862, when the land was conveyed to him by Zimmerman. The statute then commenced and continued to run, except as affected by the stay law, until January 4th, 1873, when the injunction in the last suit was obtained by Wagner and Warley, a period of ten years and four days. Giving effect to the stay law of 1865, and deducting one year from this period, it results that the bar of the statute is not complete.

It is, therefore, adjudged that the right and title of the said plaintiff, Samuel W. Pegues, is hereby absolutely and fully established to the real property described in the complaint, free from the lien of the mortgage thereof claimed by the defendant, Theodore D. Wagner, and that the plaintiff recover of the defendants, Rowena L. Warley and B. S. Josey, the possession of the said real property; and further, that he recover from the defendant, Rowena L. Warley, his costs and disbursements in this action, to be adjusted by the clerk.

Defendants appealed.

*Mr. A. C. Spain,* for appellants.

*Mr. R. W. Boyd,* contra.

September 6th, 1880. The opinion of the court was delivered by

McGOWAN, A. J. This was an action for a tract of land. The plaintiff obtained judgment against one John P. Zimmerman, which was entered October 27th, 1860. Zimmerman, the defendant in execution, was then the owner of the land in dispute, but he sold and conveyed it to Theodore D. Wagner, December 31st, 1862. Wagner sold it to F. F. Warley, May 17th, 1866, who had it in possession until he died, April 16th, 1876, leaving his widow, Rowena L. Warley, executrix and

devisee, in possession.   John P. Zimmerman died intestate in 1863.   There were two proceedings to marshal the assets of his estate, in which the judgment of Pegues was presented but was never paid.   Another proceeding was instituted by Theodore D. Wagner against Pegues to enjoin the sale of the land under his judgment.   An injunction was granted January 4th, 1873, but finally dissolved November 18th, 1878.   *Wagner* v. *Pegues*, 10 *S. C.* 259.

From the view which the court takes it will not be necessary to state the facts more at length.  .After many delays, and the dissolution of the injunction, the land was sold by the sheriff, January 6th, 1879, under the judgment of the plaintiff, who bid it off; took sheriff's titles, and now brings this action for its recovery.   The defence is the statute of limitations.   The case was heard without a jury by consent of counsel.   The Circuit judge overruled the defence principally on the force of the act known as the stay law, (13 *Stat.* 286, 305,) suspending in certain cases the operation of the statute of limitations, and adjudged "that the plaintiff recover of the defendants the possession of the said real property."

The defendants excepted, and charged as error "so much of the judgment as holds that Section 4 of the stay law of 1865 applied to the case."

The plaintiff, content with the result of the judgment, yet, "in case the court should come to the conclusion that there was error in so much of the Circuit opinion as is appealed from," insists that the judgment shall be affirmed on other grounds, and among them "that the possession of Warley cannot be connected with that of Wagner so as to make out a continuous adverse possession for the statutory period."

We will first consider the question here raised as to the right of the defendant to *unite the possessions,* as it will decide the case if the conclusion should be reached that the possession of Wagner could not be united with that of Warley so as to make out ten years of adverse possession.

It seems now settled in this state that the statute of limitations runs against the lien of a judgment in favor of a purchaser from the judgment debtor without any other evidence of the adverse

character of his possession than the purchase, conveyance and possession. *McRaa* v. *Smith*, 2 *Bay* 339; *Lamar* v. *Raysor*, 7 *Rich.* 511. The authority on which these cases rest is not clearly perceived, as the statute refers in terms *to title*, and is silent as to *a lien*, which, by the law then of force, continued for twenty years, or until presumed paid. It is said in the case of McRaa *v.* Smith that it was so held for the reason that "judgments and executions were within the mischiefs intended to be guarded against by the statute, although not particularly mentioned in it." In the case of a purchaser from a mortgagor a different doctrine has been declared and sustained by a long line of authorities. *Thayer* v. *Cramer*, 1 *McC. Ch.* 395; *Wright* v. *Eaves*, 5 *Rich. Eq.* 81; *Norton* v. *Lewis*, 3 *S. C.* 25; *Gillison* v. *S. & C. Railroad Company*, 7 *S. C.* 181. Is there any difference in principle between the lien of a mortgage recorded and that of a judgment in the proper office, as far as the statute of limitations is concerned? Both are liens—one general on all the property, and the other specific on particular property of the debtor—one created by the law and the other by the parties. But it is difficult to see that they differ in such a manner as to make necessary and proper a construction of the statute in one case different from that in the other. It is desirable that there should be harmony in the law, and that as far as possible the same rule should be made to apply in like cases.

The case of McRaa *v.* Smith has, however, been recognized in other cases, and we do not propose to disturb it. But as we think it out of harmony with those of similar character, we are not willing to extend it beyond the very point decided. There was in that case no necessity to unite possessions. There was only one continuous possession in the defendant Smith for the whole period necessary. The question now presented is, whether the principle there announced requires us to go further and apply it to a case in which the bar of the statute cannot be made out against a judgment creditor without uniting the possessions of two successive occupants of the land. Can the possession of the first occupant be added to that of the second when he is sued by the purchaser at sheriff's sale?

It has been well settled in this state that the operation of the act of limitation depends upon *actual possession* of the land and not upon mere *non-claim* of the *plaintiff,* and that one in possession of land for a less time than the statutory period *cannot unite his possession* with that of one from whom he purchased in order to make out ten years, for, until that period has run out, they are both, as it respects the true owner, as mere trespassers. A conveyance from the first to the second tenant, under such circumstances, conveys nothing. It is said in several of the cases that " actual deed from a person who has no right conveys nothing." *Mazyck* v. *Wight,* 2 *Brev.* 151; *King* v. *Smith, Rice* 11; *Beadle* v. *Hunter & Garrett,* 3 *Strob.* 331; *Dillard* v. *Philson,* 5 *Strob.* 213.

But it is suggested that these authorities only refer to cases where all the occupants, whose possession it is proposed to tack, were originally *naked trespassers,* and do not embrace a case where the first occupant got his possession by regular conveyance from the person having the legal title. The judgment in this case states the proposition as follows : " When the possession was originally wrongful, until it ripened into right by lapse of time or by descent cast, there was no estate, no right of property which could be conveyed by deed. Consequently the purchaser from a party then in possession of lands of another acquired nothing by his deed. They were, as to the *real owner,* mere trespassers, who could not tack their successive trespasses together so as to defeat the right of him who had the title. \* \* \* There is no case in this state which determines that a conveyance of land by him who holds the same *by a perfect title* to another to whom he transfers such title, accompanied with possession, breaks the continuity of such possession. On the contrary the decisions only go to this extent, that a mere trespasser, having nothing to convey, no estate in the land, cannot, by his deed, convert the entry of his successor into anything more than a naked trespass as against the rightful owner."

The exact point here made has never, so far as we know, been decided in this state. The cases in the reports were actions by the real owners against persons claiming title by possession, but who did not connect themselves with the legal title. We have

not been referred to any case, and we have not been able to find one where possessions were united against the lien of a judgment creditor who was not the owner of the land but had a lien upon it as judgment creditor or mortgagee. We do not think that the case of dower, decided in *Wilson* v. *McLenaghan, McM. Eq.* 35, is analogous. Dower is a peculiar estate, issuing out of another estate. The necessary concession of the dowress is that hers is the title of her husband. Dower right is inchoate until established by law, and is a mere chose. Then, if that case does not control this, what rule of construction shall be adopted in the case where a judgment debtor sells land subject to a lien? We must keep in view the difference between power and property. The right to the property, as such, and the right to levy and sell are distinct. The judgment creditor was not the true owner of the land. As creditor he could not sue for the land. His right was a lien—the power to levy and sell. Possession by the defendant in execution for ten years would not bar the lien which runs for twenty years or until presumed paid. Yet it might be so considered if the judgment creditor were the real owner of the land. The judgment debtor has the legal title, *subject to a lien,* and, therefore, it cannot be said that he has "perfect title." If he conveys the land the right to levy and sell is not lost, but goes with it. The purchaser can take no higher right than the seller can give. He is fixed with knowledge of the lien, and takes and holds subject to it as much so as the defendant in execution himself. His possession is not necessarily adverse to the lien, but consistent with it. He buys property subject to a known encumbrance, and he holds in subordination to it. So far as the lien is concerned his title is defective—he never had it—and *quoad hoc,* is he not in the exact condition of the naked trespasser? Not a trespasser out and out, but entirely without title or estate so far as the lien has effect. All the cases hold that the possessions cannot be united if the first taker had no right whatever. The fact here is that the first taker had the legal right, *but qualified by the lien.* Would it not seem that upon principle the same result should follow *to the extent of that qualification?* So far as the lien was concerned, the first purchaser, Wagner, had no right whatever

except in subordination to it, and, before he acquired title by ten years' possession, " he could not, by his deed, convert the entry of his successor into anything more than a naked trespass *as against the lien.*"

Warley went into possession of the land still subject to the lien. The judgment creditor, who, as to the lien, was the true owner, could not enforce it against him until he went into possession, and as his deed from Wagner conveyed nothing but the legal title subject to the lien, he could not claim the benefit of adverse possession in quieting his title as against the lien until he had possession himself for the whole period of ten years.

We do not think this case should be an exception to the well established general rule that possessions cannot be united to make out the time necessary to complete the bar of the statute.

We concur with the Circuit judge that the fourth section of the act of 1865, (13 *Stat.* 286, 305,) suspended the statute from running in favor of Warley during the continuance of that act. In some particulars the section is not expressed in clear technical language, but we think there is no doubt about the intention.

The judgment below is affirmed and the appeal dismissed.

WILLARD, C. J., and FRASER, A., A. J., concurred.